1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   S.A.,

12                                    Petitioner,

13   v.

14   CHRISTOPHER J. LAROSE, Warden,
     Otay Mesa Detention Center; et al.,
15
                                      Respondents.
16

17

18

19

Case No.:  26cv0592-LL-DEB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**

[ECF Nos. 1, 2]

20       Before the Court are Petitioner S.A.'s Petition for Writ of Habeas Corpus Pursuant

21   to 28 U.S.C. § 2241 [ECF No. 1 ("Pet.")] and Motion for Temporary Restraining Order

22   [ECF No. 2]. Respondents filed a Response [ECF No. 7], and Petitioner filed a Reply [ECF

23   No. 8]. For the reasons set forth below, the Court **GRANTS** the Petition and **DENIES AS**

24   **MOOT** the Motion for Temporary Restraining Order.

25   **I.      BACKGROUND**

26       Petitioner, a citizen of Afghanistan and Russia, fled to the United States seeking

27   asylum in February 2023. ECF No. 2 at 6. On February 19, 2023, he was placed in removal

28   proceedings under 8 U.S.C. § 1229a and released on humanitarian parole. Pet. ¶ 4;

26cv0592-LL-DEB

1    ECF No. 7 at 2; ECF No. 7-1 at 1. Petitioner filed his application for asylum in January

2    2024, and Respondents issued him a work authorization card in August 2024. *Id.*; Pet. ¶ 5.

3    On January 26, 2026, Petitioner alleges he was re-detained while working without notice

4    or a hearing. ECF No. 2 at 7; Pet. ¶¶ 7–8. Upon his re-detention, DHS initiated new removal

5    proceedings under 8 U.S.C. § 1229a and issued a new Notice to Appear. ECF No. 7 at 2;

6    ECF No. 7-2 at 1. Petitioner has no criminal history. Pet. ¶ 1.

7         On January 30, 2026, Petitioner filed the instant Petition and Motion for Temporary

8    Restraining Order, alleging that his re-detention without notice and a hearing violates the

9    Fifth Amendment's Due Process Clause, the Administrative Procedure Act, and the

10   Immigration and Nationality Act. Pet. ¶¶ 49–86; ECF No. 2.

11        Petitioner states that on February 10, 2026—the day before his Reply was due—an

12   immigration judge issued an order releasing Petitioner on bond, but that he remains in

13   Respondents' custody as of the filing of the Reply on February 11, 2026. ECF No. 8 at 4.

14   **II.    LEGAL STANDARD**

15        A district court may grant a writ of habeas corpus when a petitioner "is in custody

16   in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

17   § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241

18   expressly permits the federal courts to grant writs of habeas corpus to aliens when those

19   aliens are 'in custody in violation of the Constitution or laws or treaties of the United

20   States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case

21   by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16

22   (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

23   **III.    DISCUSSION**

24       **A.    Jurisdiction**

25        Respondents argue that as a threshold matter, Petitioner's claims and requested relief

26   are jurisdictionally barred under 8 U.S.C. § 1226(e) [ECF No. 7 at 2–3], but the Court does

27   not agree. Section 1226(e) states that "[n]o court may set aside any action or decision by

28   the Attorney General under this section regarding the detention of any alien or the

2

1    revocation or denial of bond or parole." 8 U.S.C. § 1226(e). However, the Supreme Court

2    has held that "[s]ection 1226(e) contains no explicit provision barring habeas review" and

3    allowed a constitutional challenge to an action under § 1226. *Demore v. Kim*, 538 U.S. 510,

4    517 (2003). Respondents rely on *Jennings v. Rodriguez*, 583 U.S. 281 (2018), but that

5    ruling does not support their argument. *Id.* at 295. The Court in *Jennings* explained that

6    challenges to the government's "detention authority under the 'statutory framework' as a

7    whole" or even to "the constitutionality of the entire statutory scheme" is "not a matter of

8    'discretionary judgment,' 'action,' or 'decision,' and thus "falls outside the scope of

9    § 1226(e)." *Id.* at 295–96 (citing *Demore*, 538 U.S. at 516–17). Petitioner alleges that his

10   re-detention without notice and a hearing violates the Fifth Amendment's Due Process

11   Clause, the Administrative Procedure Act, and the Immigration and Nationality Act.

12   Therefore, the Court finds that §1226(e) does not limit its jurisdiction in this matter, which

13   raises constitutional claims and questions of law. *See Jennings*, 583 U.S. at 295–96; *Singh*

14   *v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although § 1226(e) restricts jurisdiction

15   in the federal courts in some respects, it does not limit habeas jurisdiction over

16   constitutional claims or questions of law.").

17       **B.    Detention Statue**

18       Respondents argue that Petitioner is an "applicant for admission" who is properly

19   detained under the mandatory detention statute 8 U.S.C. § 1225(b)(2). ECF No. 7 at 3.

20   Petitioner disagrees, contending that his detention under § 1225(b)(2) is unlawful. ECF

21   No. 8 at 3–4.

22       The Court finds Petitioner is wrongfully detained under 8 U.S.C. § 1225(b). As a

23   noncitizen who, at the time of his detention, had been present in the United States for almost

24   three years on parole while he sought asylum, Petitioner was and is subject to

25   8 U.S.C. § 1226(a), which states that a noncitizen "may be arrested and detained pending

26   a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C.

27   § 1226(a). By contrast, 8 U.S.C § 1225(b) applies to noncitizens arriving at the border or

28   who    very    recently    entered    the    United    States.    *See    Beltran    v.    Noem*,

3

26cv0592-LL-DEB

No. 25CV2650-LL-DEB, 2025 WL 3078837, at *4–7 (S.D. Cal. Nov. 4, 2025). As the Supreme Court explained, the government may "detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," while § 1226(a) allows the government to "detain certain aliens *already in the county* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). The Court adopts its reasoning stated in *Beltran v. Noem* on this issue. *Id.* at *4–7.

### C.   Due Process Clause

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors:

26cv0592-LL-DEB

1   (1) "the private interest that will be affected by the official action"; (2) "the risk of an

2   erroneous deprivation of such interest through the procedures used, and the probable value,

3   if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's

4   interest, including the function involved and the fiscal and administrative burdens that the

5   additional or substitute procedural requirement would entail." *Id.* at 335.

6        The Court finds that all three factors support a finding that the government's

7   revocation of Petitioner's parole without notification, reasoning, or an opportunity to be

8   heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has

9   a significant liberty interest in remaining out of custody pursuant to his parole. *See Pinchi*,

10  792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release

11  a noncitizen pending removal proceedings, after that individual is released from custody

12  she has a protected liberty interest in remaining out of custody." (citations omitted)).

13  Freedom from detention is a fundamental part of due process protection. *See Hernandez v.*

14  *Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core

15  of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*,

16  504 U.S. 71, 80 (1992))).

17       Second, the risk of an erroneous deprivation of such interest is high as Petitioner's

18  parole was revoked without providing him a reason for revocation or giving him an

19  opportunity to be heard. Since the initial determination that Petitioner should be paroled

20  because he posed no danger to the community and was not a flight risk, there is no evidence

21  that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176

22  (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir.

23  2018) ("Release reflects a determination by the government that the noncitizen is not a

24  danger to the community or a flight risk."). There is no indication that Petitioner has failed

25  to abide by the conditions of his release. "Once a noncitizen has been released, the law

26  prohibits federal agents from rearresting him merely because he is subject to removal

27  proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially

28  changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has

26cv0592-LL-DEB

1    become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is

2    high because neither the government nor Petitioner has had an opportunity to determine

3    whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation

4    omitted). It follows that the probable value of additional procedural safeguards, such as

5    notice and a pre-deprivation hearing, is also high.

6        Third, the government's interest in detaining Petitioner without notice, reasoning,

7    and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has

8    articulated no legitimate interest that would support arresting [petitioner] without a pre-

9    detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC),

10   2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963,

11   970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any

12   point, it has the power to take steps toward doing so; but its interest in doing so without a

13   hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-

14   deprivation hearing would be fiscally or administratively burdensome on the government.

15   *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine

16   and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO

17   (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

18       Therefore, because Respondents detained Petitioner by revoking his parole without

19   notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is

20   unlawful. [1] *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629,

21   at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice

22

23   ───────────────

24   [1] Because the Petition can be resolved on these procedural due process grounds, the Court

25   declines to reach Petitioner's claims of substantive Due Process, INA violation, or APA

     violation. However, the Court notes that other courts have found violations of the APA in

26   similar circumstances. *See, e.g.*, *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL

27   2800149, at *3, 13 ("Petitioner's parole was revoked without an individualized

     determination or provided reasoning, which violated the APA."); *Sanchez*, 2025 WL

28

26cv0592-LL-DEB

1    and a hearing and without a showing of a change of circumstances, thus violating her due

2    process rights and rendering her detention unlawful). The proper remedy for the unlawful

3    detention is Petitioner's immediate release subject only to the conditions of his preexisting

4    parole. *See Noori*, 2025 WL 2800149, at *1 (finding DHS violated the petitioner's due

5    process rights by revoking his parole without notice or a hearing and ordering his

6    immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at

7    970 (ordering immediate release after the petitioner was detained while out on bond

8    without notice or pre-deprivation hearing).

9        Accordingly, the Court **GRANTS** Petitioner's Petition.

10   **IV.   CONCLUSION**

11       For the reasons above, the Court **ORDERS**:

12       1.    Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**. [2]

13       2.    Petitioner's Motion for Temporary Restraining Order is **DENIED AS**

14   **MOOT**.

15       3.    Respondents shall immediately release Petitioner from custody subject only

16   to the conditions of his preexisting parole.

17       4.    Prior to any re-detention of Petitioner, he is entitled to notice of the reasons

18   for revocation of his parole and a pre-deprivation hearing before a neutral immigration

19   judge to determine whether detention is warranted. At such a hearing, the government shall

20   bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a

21   danger to the community or a risk of flight. *See Martinez Hernandez v. Andrews*,

22   No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025)

23   (finding that the petitioner's initial release "reflected a determination by the government

24

25

26   2770629, at *4 (finding revocation of the petitioner's parole arbitrary and capricious
     because respondents did not state any reasons for the revocation).

27

28   [2] In the Petition's prayer for relief [Pet. at 20], Petitioner requests attorney's fees and costs
     under the Equal Access to Justice Act, which the Court **DENIES without prejudice**.

26cv0592-LL-DEB

1    that the noncitizen is not a danger to the community or a flight risk" and so if the

2    government initiates re-detention, "it follows that the government should be required to

3    bear the burden of providing a justification for the re-detention"); *Pinchi*, 792 F. Supp. 3d

4    at 1038 (ordering that before the petitioner can be re-detained, she must be provided with

5    a pre-detention bond hearing before a neutral immigration judge and that she may not be

6    detained "unless the government demonstrates at such a bond hearing, by clear and

7    convincing evidence, that she is a flight risk or a danger to the community and that no

8    conditions other than her detention would be sufficient to prevent such harms").

9         5.    The Clerk of Court shall enter judgment in Petitioner's favor and close this

10    case.

11        **IT IS SO ORDERED.**

12    Dated:  February 27, 2026

13

14    Honorable Linda Lopez
      United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28